IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA JOHNSON,<br><br>      *Plaintiff,*<br><br>   v.<br><br>KEYSTONE QUALITY TRANSPORT<br>COMPANY, *et al.*,<br><br>      *Defendants.* | CIVIL ACTION<br>NO. 16-6603 |

**PAPPERT, J.**                                                                                      January 25, 2018

**MEMORANDUM**

      Pamela Johnson sued her former employer Keystone Quality Transport Company and several individual defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, § 9-1100, *et. seq.* ("PFPO"), alleging hostile work environment and retaliation claims. Johnson claims that she was harassed and assaulted by her supervisor Charles Lane and that Frantz Magloire and Barbara Crews failed to act promptly and reasonably in response to her complaints and ultimately fired her in retaliation. Keystone, Magloire and Crews moved for summary judgment. The Court, after reviewing the record and holding a hearing, denies the Motion for the reasons that follow.

I

      Johnson was a part-time driver for Keystone, an emergent and non-emergent medical transport company. (*See* Compl. at 2, ECF No. 1; Defs' Mot. & Mem. for Summary Judgment, Exhibit C ("Johnson Dep.") at 43:22, ECF No. 32; Mem., Exhibit D

1

("Magloire Dep.") at 7:25–8:2.) Johnson worked out of Keystone's Parkside location in Philadelphia, where Lane was the day-shift supervisor and Magloire was the base manager. (*See* Compl. at 3; Resp. in Opp. at 3, 7, ECF No. 36; Johnson Dep. at 54:17–55:5; Magloire Dep. at 9:3-18.) Johnson alleges that shortly after being hired and throughout the course of her approximately three-month long employment with Keystone, Lane sexually harassed her, creating a hostile work environment. (*See* Compl. at 4–5; Resp. at 7–8; Johnson Dep. at 65:21–69:1.)

Johnson contends that the harassment escalated over the course of her time at Keystone, starting with verbal harassment that eventually led to Lane sending her sexually explicit photos and physically assaulting her. (*See* Compl. at 4–5; Resp. at 7–8; Johnson Dep. at 60:16-23; 83:19–84:20.) Johnson claims that she informed Magloire and Crews, the paratransit operations manager (Resp., Exhibit 5 ("Crews Dep.") at 8:16), of the conduct but they did not respond promptly and reasonably, though they fired Lane for sending Johnson the explicit photos. (*See* Compl. at 4, 6; Resp. at 3–4; Johnson Dep. at 72:1-11; 81:20–82:13; 76:2–77:10.) Johnson further contends that she was retaliated against after complaining about Lane's conduct. She alleges that her co-workers became hostile, that Magloire and Crews attempted to transfer her to a less convenient base, that Magloire temporarily suspended her under false pretenses, and that she was ultimately fired. (*See* Compl. at 6–7; Resp. at 4, 6–8, 16; Johnson Dep. at 65, 91:16–92:15; 94:10-20.)

Johnson asserts nine separate claims for gender discrimination and retaliation. Counts I & II allege hostile work environment and retaliation under Title VII and are brought against only Keystone. Counts III & IV claim hostile work environment and

retaliation under the PHRA against all four defendants. Counts VI & VII assert hostile work environment and retaliation under the PFPO against all four defendants.[1] Count V is for aiding and abetting the PHRA claims and Count VIII is for aiding and abetting the PFPO claims. Count IX alleges assault and battery against Lane.[2] (*See* Compl. at 8–13.) Keystone, Magloire and Crews moved for summary judgment on Counts I – VIII, arguing that there is no genuine issue of material fact as to whether Johnson suffered an adverse employment action and that individuals cannot be held liable under Title VII, the PHRA, or the PFPO. (Mot. at 8–14.)

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, the court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009) (quoting *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court may not, however, make credibility determinations or weigh the evidence in considering motions

---

[1] Title VII, the PHRA, and the PFPO are assessed under the same legal standard. *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (stating that the PHRA is to be interpreted as identical to federal anti-discrimination laws); *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) ("Title VII, the PHRA, and the PFPO have been interpreted in a similar fashion."); *LeBlanc v. Hill School*, No. 14–1674, 2015 WL 144135, *7 (E.D. Pa. Jan. 12 2015) ("The standards for proving sex and age discrimination claims under the PHRA are identical to those under Title VII and the ADEA.").

[2] Default has been entered against Lane (*see* ECF No. 12), who is unrepresented.

3

for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

III

A

At oral argument, Defendants' counsel acknowledged the existence of genuine issues of material fact with respect to each element of Johnson's hostile work environment claims, precluding summary judgment on those claims. (Hr'g Tr. at 17–18.) Since the Defendants' summary judgment argument with respect to the aiding and abetting claims relies on their contention that judgment should be entered on all substantive PHRA claims (Mot. at 13; Hr'g Tr. at 31–32), summary judgment on the aiding and abetting counts is also denied.[3] *See Dreshman v. Henry Clay Villa*, 733 F. Supp. 2d 597, 623 (W.D. Pa. 2010) ("Because Plaintiff's discrimination and retaliation claims remain, his aiding and abetting claims also survive.").

B

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006). Plaintiff must prove that she would not have suffered the adverse actions but for her protected activity. *Univ. of Tex.*

---

[3] Defendants' related argument that they are entitled to summary judgment on the individual liability claims also fails. "Both Pennsylvania and Philadelphia impose individual liability on any person who aids, abets, incites, compels or coerces, or directly or indirectly commits unlawful discrimination." *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016)) (citing 43 Pa. Stat. Ann. § 955(e); Phila. Code. § 9-1103(h)). To the extent that a defendant cannot be held individually liable for both the substantive claim and aiding and abetting that claim, the Court will instruct the jury accordingly.

*Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). "If the employee establishes this *prima facie* case of retaliation, . . . 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Moore*, 461 F.3d at 342 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997)); *McDonnell Douglas Corp. v. Green*, 59 U.S. 792 (1973).

Defendants claim that there is no genuine issue of material fact as to whether Johnson suffered an adverse employment action, arguing that the record establishes that Johnson voluntarily abandoned her job. Defendants assert that while Johnson testified in her deposition that she was terminated, this self-serving evidence is directly controverted by other record evidence, specifically Magloire's version of events. Defendants rely on *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254 (3d Cir. 2012), which they contend stands for the proposition that "self-serving affidavits and deposition testimony are alone insufficient to withstand a motion for summary judgment when impeached by a well-supported showing to the contrary." (Mot. at 8.)

*Gonzalez*, which dealt with Gonzalez's intent when he said, during a naturalization interview, that he had no children, is inapplicable here. In that case, the District Court concluded, and the Third Circuit agreed, that Gonzalez's assertion that he did not know he had children and thus was not lying did not create a genuine issue of fact for the jury when viewed together with "circumstantial evidence of his knowledge," including his long-time relationship with the mother and the evidence that he supported her during pregnancy, she told him he was the father, the children called

5

him "dad" and he amended their birth certificates to reflect that he was their biological father. *Gonzalez*, 678 F.3d at 263–64.

No such "well-supported showing" contrary to Johnson's testimony is present in this case. Johnson alleged in her complaint and at her deposition that she was terminated by Keystone. (Compl. at 7; Johnson Dep. at 72:1–11.) To purportedly show the absence of a disputed issue of material fact on this point, Defendants cite Magloire's deposition testimony where he denied firing Johnson and medical records in which Johnson indicated that she was employed by Keystone. (Mot. at 4, 10; Reply at 3.) The records, dated November 2, 2015, are consistent with Johnson's assertion in her complaint that she was terminated by Keystone on November 6, 2015. (*Compare* Johnson Dep., Exhibit 6, *with* Compl. at 7.) Other than Magloire's (similarly self-serving) testimony, there is no evidence in the record contradicting Johnson's version of how her employment with Keystone came to an end, nor is there any record evidence corroborating Magloire's side of the story. (*See* Hr'g Tr. at 29–31.) In sum, Johnson has testified that she was fired and Magloire contends Johnson abandoned her position; assessing the credibility of both witnesses and figuring out what really happened is the jury's job.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.